W. B. Johnson v. The State.

No. 6809.    Decided May 31, 1922.

Rehearing Granted October 18, 1922.

1.—Stock Law—Information—Description of Sub-division.

The description of the sub-division of the county of the prosecution, in which it was alleged that the running at large of defendant's hogs was forbidden, was sufficient, both in the petition for the election and in the various orders of the Commissioner's Court relating to the matter, and there was no error in overruling the motion to quash the information.

2.—Same—Commissioners Court—Tabulating Votes.

The allegation in the information that within ten days after the election, etc., the Commissioners Court of said county in session opened

said returns, counted and tabulated the vote, and found that the election was carried, was sufficient.

### 3.—Same—Information—Date of Election.

Where the information alleged that on February 14, 1921, the Commissioners Court ordered the election in question to be held on March 22, 1921, the language of said information was not susceptible of the construction that the order of the County Judge, in obedience to that of the Commissioners Court ordered the election for the same day as the date of said order.

### 4.—Same—Rehearing—Insufficiency of the Evidence—Variance—Contradictory Statutes.

Where the State in its information charged that the returns of the election held for the sub-division in question were opened, counted, and tabulated by the Commissioners Court, a failure of the State to prove that the returns of the election for said sub-division were opened, counted and tabulated by the Commissioners Court was fatal to the conviction, and proof of an order evidencing that the returns of an election for the whole county were opened, tabulated, and counted would not suffice. The court in its original opinion was misled by the contradictory provisions of Article 7219, and Article 7220, Vernon's Civil Statutes.

Appeal from the county court of Aransas. Tried below before the Hon. Joe. A. Harper.

Appeal from a conviction of a violation of the stock law; penalty, $5. The opinion states the case.

*John Deberry Wheeler,* for appellant.—Cited: Cline v. State, 227 S. W. Rep., 668; Watkins v. Vaughn, 216 S. W. Rep., 480; Hill v. State, 124 S. W. Rep., 940; Railway v. Campbell, 105 S. W. Rep., 579.

*R. G. Storey,* Assistant Attorney General, for the State.

LATTIMORE, JUDGE.—Appellant was convicted in the County Court of Aransas County of violating the stock law, and his punishment fixed at a fine of $5.

The overruling of his motion to quash the information was made the subject of a bill of exceptions by appellant. We think the description of the subdivision of Aransas county, in which it was alleged that the running at large of appellant's hogs was forbidden, was sufficient both in the petition for the election and in the various orders of the Commissioners Court relating to the matter. Said subdivision was described as Live Oak Peninsula, bounded on the East by Red Fish and Aransas Bays; on the North by Aransas and Copano Bays; on the West by Copano and Puerto Bays, and on the South by the line between the counties of San Patricio and Aransas. It is insisted that this description fails to meet the requirements of Article 7211, Vernon's Complete Texas Statutes, 1920, wherein it is said, speaking of the description which must appear in regard to a

subdivision of a county wherein such stock law election is held, "such subdivision shall be particularly described and the boundaries thereof designated." As indicated above, we think this a sufficiently particular description and are unable to appreciate the force or application of the authorities cited bearing on questions pertaining to high, low or mean tides. It is clear that when such election is ordered for a county, it is sufficient to name the county, and the location of the county lines are matters with knowledge of which every citizen is chargeable. It could hardly be contended that as to coastal counties, there could be a strip of land technically called shore, between high and low tides, which would not be included in a county-wide election held in such county. Nor do we think there is need for more particular calls for boundaries, than by reference to the bays on our coast lines, which are apparently fixed and well defined as natural objects can be. It is a familiar rule that calls for natural objects will control mere calls for metes and bounds when in conflict, and there appearing no contention of the fact that the bays named as boundaries in the proceedings in the instant case, are not well known and established bodies of water, there is nothing in the contention. Ince, et al., v. Barber, et al., No. 6793, decided in Fourth Court of Civil Appeals on April 5, 1922.

The information further alleges that within ten days after the election and after the managers of such election had made their returns to the county judge of Aransas County, the Commissioners Court of said county in session opened said returns, counted and tabulated the votes and found that 112 of same were for, and 97 of said votes were against, said stock law, etc. Part of appellant's complaint in his motion to quash is directed at this portion of the information. It was formerly the law that the returns in such election should be counted tabulated by the county judge alone, and it was provided in former Article 7220, Revised Civil Statutes, that the opening, counting and tabulating by said county judge, should be in the presence of the county clerk and at least one justice of the peace, or two responsible freeholders of the county. This last mentioned article was amended in 1919 by Chapter 59 of the General Laws, Second Called Session of the thirty-sixth Legislature, which provided that the returns for such election should be opened, tabulated and counted by the Commissioners Court of the county in the same manner as provided for general elections in the State. Section 2 of said amendatory act practically obviates the raising of any question in regard to irregularities in such returns, which are based on the failure of any ministerial officer to perform any duty required of him. In our opinion the information in the instant case charging the counting and tabulating of the returns to have been by the Commissioners Court, was not subject to the criticism directed at same.

The information alleges that on February 14, 1921, the Commissioners Court ordered the election in question to be held on March

22, 1921. We do not think the language of said information in reference to this matter, susceptible of the construction that the order of the county judge in obedience to that of the Commissioners Court, ordered the election for the same day as the date of said order.

Objection to the introduction of the order of the Commissioners Court upon the petition for election, on the ground of variance between the description of the subdivision therein, and said description in the information, is not well founded. The only variance appears to be that the word ''southern'' is in the order, which is not in the information, and this does not seem to us to materially affect the matter.

We find nothing in the statute governing the holding of an election of this character which makes its validity dependent upon any order of the Commissioners Court declaring the result of such election, and hence are of opinion that the order of said court offered in evidence by the State, declaring that the stock law had been carried in the entire county, was regarding a matter not material for the State to not have proved, and was of no injury to the appellant. There is no allegation in the information in reference to such order of the Commissioners Court. The only duty imposed upon the Commissioners Court by statute is that set out in amended Article 7220, *supra,* which directs said court shall open, tabulate and count the returns. Article 7221 requires the county judge to immediately issue his proclamation declaring the result of such election, and it is not claimed here that such proclamation failed to follow in its description of the subdivision in question, the petition and preliminary orders made with reference thereto. In said proclamation the subdivision is described as in the information herein, except that the word ''southern'' also appears therein. Said proclamation further contains the following statement:

''Whereas, the undersigned county judge of Aransas County, Texas, has tabulated and counted said returns and ascertained the result of said election in the manner prescribed by law, and has found that the majority of the votes cast at such election were 'For the Stock Law.'

Now, therefore, I, Joe A. Harper, County Judge of Aransas County, Texas, do hereby issue this my proclamation, declaring that such election resulted in favor of said proposition; and I order and direct that this proclamation shall be posted at the Court House of this County, and after the expiration of thirty days from its issuance, it shall be unlawful to permit to run at large, within the limits designated herein, any of the animals hereinbefore mentioned.''

There having been no sufficient legal attack upon any of the steps taken in order to put into effect in said subdivision, the stock law which forbade the running at large of hogs, etc.,—it was not erroneous for the trial court to assume in the charge that said law was

in effect in said subdivision. Williams v. State, 37 Texas Crim. Rep., 238; Cantwell v. State, 47 Texas Crim. Rep., 521; Roberson v. State, 91 S. W. Rep., 578; Ellis v. State, 59 Texas Crim. Rep., 630; Moreno v. State, 64 Texas Crim. Rep., 660; Creed v. State, 69 Texas Crim. Rep., 464, 155 S. W. Rep., 240.

This disposing of the contentions made by appellant, and finding ourselves unable to agree with any of same, an affirmance is ordered.

*Affirmed.*

### ON REHEARING.

### October 18, 1922.

LATTIMORE, Judge.—In a forceful motion for rehearing appellant insists that the allegations of the information herein, are not supported by the proof. It is alleged that after an election was held in the described subdivision of Aransas County to determine whether hogs, sheep and goats run at large therein, and after the returns were made, that "on the 29th day of March, 1921, the said Commissioners Court of said Aransas County, in session, opened said election returns, counted and tabulated the votes cast at said election and found that 112 votes had been cast for and 97 votes against the adoption of said stock law, and that a majority of 15 votes were cast for the stock law, voted upon as aforesaid at said election on said 22nd day of March, 1921." It will be borne in mind that the territory embraced in the subdivision referred to was the southern part of said county only. The order to the Commissioners Court as introduced over appellant's objection, is as follows:

"At a meeting of the Commissioners Court of Aransas County, Texas, held on the 29th day of March, 1921, came on to be considered the returns of an election held on the 22nd day of March 1921, to determine whether or not hogs, sheep and goats shall be permitted to run at large in Aransas County and it appearing that said election was in all respects lawfully held and said returns duly and legally made and there were cast at said election 209 votes of which number 112 were cast 'For the Stock Law,' and 97 votes cast 'Against the Stock Law.'

"It is therefore ordered and declared that the proposition against permitting hogs, sheep and goats being permitted to run at large in Aransas County was sustained by a majority vote of the freeholders in said county and that the Court Judge is ordered to issue his proclamation declaring the result of said election and declaring that it shall be unlawful for hogs, sheep and goats to run at large in Aransas County, Texas, after 30 days after posting said proclamation, which notice be posted on March 30th, 1921."

Clearly this order can not be held to relate to, or to carry into effect the result of, an election held in only a subdivision of said

county. True, the order and proclamation of the county judge of said county of date March 30, 1921, relates to and describes the subdivision of said county named in the petition and order for the election, and recites that the return of all votes cast at such election had been made as required by law, and that he, the county judge, had tabulated and counted the returns and ascertained the result of said election in the manner prescribed by law. However, this recitation and the apparent contradiction in present Article 7219 and 7220, Vernons Complete Texas Statutes, conduced to lead us to overlook the fact that the pleader had alleged that the returns were opened, counted and tabulated by the Commissioners Court, when the evidence did not support such allegation. Said articles of the statute referred to are as follows:

"Article 7219. On or before the tenth day after any election under the provision of this chapter, the persons holding such election shall make return of all the votes cast at their respective voting places for and against said proposition to the county judge of the county, who shall tabulate and count said returns and ascertain the result of said election.

"Article 7220. The returns shall be opened, tabulated and counted by the Commissioners Court of the county in the same manner as provided for all general elections in the State of Texas."

That these articles appear mutually contradictory is self-evident.

Article 7219 is part of the enactment of 1876, while old Article 7220 was amended in 1919 by the Second Called Session of the thirty-sixth Legislature to read as above set out, but the amendatory act contained no repealing clause.

We have concluded that appellant's contention as made in his motion is well founded. The State having charged that the returns of the election held for the subdivision in question, were opened, counted and tabulated by the Commissioners Court, and it being well settled that it is necessary both to allege and prove all needful steps which must be taken in the adoption of a local option law such as this, would seem to necessarily make fatal the failure of the State to prove that the returns of the election for said subdivision were opened, counted and tabulated by the Commissioners Court. Proof of an order evidencing that the returns of an election for the whole county were opened, tabulated and counted, would not suffice. In all material matters the allegation and proof must correspond.

Appellant's motion for rehearing is granted, the judgment of affirmance set aside, and a reversal is ordered.

*Reversed and remanded.*